UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————————

ONZIE TURNER,

                                   Plaintiff,

                                                            DECISION AND ORDER

                                                            03-CV-6401L

                    v.

GLENN S. GOORD, et al.,


                                   Defendants.

———————————————————————————————

    Plaintiff, Onzie Turner, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants, all of whom at all relevant times were DOCS employees, violated his constitutional rights in a number of respects, in particular in connection with his complaints of chest pain on April 29, 2003. Defendants have moved for summary judgment.


## BACKGROUND


    Plaintiff became a DOCS inmate in December 1999, and arrived at Orleans Correctional Facility ("Orleans") on July 6, 2001. He alleges that he began experiencing chronic chest pain and shortness of breath around February 2003. He allegedly told defendants Doctors Sinha and Reginald

Sutton about these problems, but they allegedly downplayed plaintiff's symptoms and accused him of malingering.

On April 29, 2003, plaintiff allegedly began suffering severe chest pains and shortness of breath.  He went to the Orleans infirmary that morning, where defendant Nurse Evelyn Cygan allegedly told him that she would call him back after she finished attending to several other inmates.

Plaintiff returned to the infirmary about 4:45 p.m.  Nurse Cygan was no longer on duty.  The staff performed an EKG on plaintiff, and he was given oxygen.  Dr. Sinha directed that plaintiff be kept there and monitored while he obtained an opinion from a consulting physician at University Emergency Medical Services, Inc.

Based on the consultant's recommendation, plaintiff was taken to Medina Memorial Hospital ("Medina") for further evaluation.  At Medina, a chest x-ray and other diagnostic procedures were performed, and the next morning plaintiff was transferred to Erie County Medical Center ("ECMC"). Apparently there was some indication that he may have suffered a myocardial infarction–*i.e.*, a heart attack–and he was treated with various medications.  He was also found to have blockage in some of his arteries, and to correct that problem, an angioplasty was performed on May 5, 2003, with a stent being inserted to clear the blockage.  Plaintiff was discharged later that day and returned to Orleans.  He returned to ECMC for a follow-up visit on May 29, which was apparently uneventful.

Plaintiff filed the complaint in this action on July 8, 2003.  He alleges that defendants, who include some of the medical staff members mentioned above as well as other DOCS employees and officials, violated his constitutional rights through their deliberate indifference to plaintiff's serious medical needs.  Plaintiff also alleges that defendants have ignored his and other inmates' complaints

about inadequate medical care at Orleans, and that they somehow failed to afford plaintiff due process with respect to a grievance that he filed about these matters on May 19, 2003.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Defendants contend that plaintiff has failed to exhaust his administrative remedies with respect to seven of the eight defendants, and that his claims against those defendants must therefore be dismissed. Defendants rely on the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under [section 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

New York State regulations provide for a three-step administrative review process of prisoner grievances. *See* 7 N.Y.C.R.R. § 701.7. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ... ." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review.

If the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility "by filing an appeal with the IGP [Inmate Grievance Program] clerk." 7 N.Y.C.R.R. § 701.7(b)(1). After the superintendent issues his decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. 7 N.Y.C.R.R. §

701.7(c).  In general, it is only after exhausting all three levels of the administrative review that a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court.  *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001); *Santos v. Hauck*, 242 F.Supp.2d 257, 259 (W.D.N.Y. 2003).

In the case at bar, plaintiff filed a grievance on May 19, 2003, complaining about the delay in his treatment on April 29, and stating that "Nurse Cygan was unprofessional in her treatment of me ... ."  Declaration of Brian Fitts (Dkt. #30) Ex. A.  Plaintiff also stated, "My doctor put me on Special Diet and I'm not getting it at all," but he did not name anyone in connection with that complaint.  *Id.*  Several other people were named in the grievance, but plaintiff did not appear to assert any complaints about them.

After investigating plaintiff's grievance, the IGRC issued a report finding that plaintiff "should of [sic] remained in the lobby for treatment and it would avoided [sic] him having to walk back to medical."  *Id.*  The IGRC also stated, however, that "the nurse on duty could have acted more proactive. (especially due to the symptoms presented) by calling the physician which then may have resulted in an ER telemedicine [consult] or being admitted to the infirmary for observation and quicker follow-up."  *Id.*

On appeal, the superintendent stated that he "agree[d] in part" with the IGRC.  He stated that he was "assured that proper medical care has been provided for the grievant" and that plaintiff was "advised to follow all medical care instructions from the medical staff who are in the best position to do so."  *Id.*  On further appeal, CORC "uph[eld] the determination of the Superintendent for the reasons stated."  *Id.*  CORC also found that plaintiff had "failed to substantiate his assertions of improper medical care."  *Id.*

Defendants contend that this grievance was insufficient to exhaust plaintiff's administrative remedies as to any defendant other than Cygan.  Plaintiff does not deny that his grievance did not contain any allegations about any of the defendants in this action other than Cygan, but he contends that he should be found to have exhausted his remedies because his grievance adequately alerted defendants of the nature of his complaint.

As this Court has previously noted, "[c]ourt of appeals decisions from several circuits have yielded different results regarding whether an inmate may bring an action against an individual who was not named in the inmate's prison grievance."  *Evan v. Manos*, 336 F.Supp.2d 255, 258-59 (W.D.N.Y. 2004) (citing cases).  The Second Circuit appears to have adopted the approach taken by the Seventh Circuit in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), in which the court held that if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.  As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming."  *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (citing *Strong* with approval).  The court in *Johnson* added that "[i]n order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  *Id.*

New York regulations provide that an "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant

has taken to resolve the complaint, *i.e.*, specific persons/areas contacted and responses received."

7 N.Y.C.R.R. § 701.7(a)(1)(i).  Thus, there is no requirement that an inmate *must* identify every

individual by name in order to exhaust his remedies as to those individuals, and plaintiff's failure

to name most of the defendants in this action does not automatically bar his claims against them.

By the same token, though, the mere fact that plaintiff filed *some* grievance, and fully

appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone

who was in any way connected with the events giving rise to that grievance.  The Court must

examine whether plaintiff's grievance sufficiently alerted prison authorities that he was alleging

some wrongdoing beyond Nurse Cygan's alleged "unprofessional[ism]."  *See*, *e.g.*, *Ortiz v. McBride*,

380 F.3d 649, 653-54 (2d Cir. 2004) (finding that inmate plaintiff had exhausted his remedies as to

his due process claim, but not as to his Eighth Amendment claim, since his administrative grievance

did not allege Eighth Amendment violation), *cert. denied*, 125 S.Ct. 1398 (2005).

I find that plaintiff has not exhausted his administrative remedies as to any defendant besides

Cygan.  His grievance alleged nothing more than one discrete instance of maltreatment at the hands

of Nurse Cygan, and nothing more.[1]  Although plaintiff now alleges that there were systemic

problems with the Orleans infirmary, and that some of the defendants in this action were aware of

those problems and failed to correct them, nothing in his grievance would have alerted the authorities

that plaintiff was making such an allegation, nor would an official investigating plaintiff's grievance

reasonably be expected to have explored such matters.  The claims against all the defendants other

than Cygan must therefore be dismissed for plaintiff's failure to exhaust his administrative remedies

---

[1]The grievance did allege that plaintiff was not receiving his prescribed diet, but plaintiff
does not appear to be asserting a claim regarding that allegation in this action.

against those defendants.  *See Sanchez v. Fisher*, No. 03 Civ. 4433, 2005 WL 1021178, at *4 (S.D.N.Y. May 2, 2005) (dismissing inmate's claim against physician where, "[d]espite his numerous [administrative] submissions and appeals, plaintiff made no allegations against [the physician] and made no claims that [the physician] failed to treat him properly"); *Evan*, 336 F.Supp.2d at 259 (dismissing inmate's claims against dentist for failure to exhaust because "there [wa]s simply no suggestion anywhere in plaintiff's grievance that [the dentist] ... had failed to provide him with adequate dental care"); *Brewer v. Jones*, No. 02 Civ. 3570, 2004 WL 235269, at *2-3 (S.D.N.Y. Feb. 5, 2004) (since "[p]laintiff's grievance did not name any individual defendants other than defendant Jones, and also was silent on the nature of plaintiff's alleged encounters with the other defendants," claims against defendants other than Jones were dismissed with prejudice); *see also Luckerson v. Goord*, No. 00 Civ. 9508, 2002 U.S. Dist. LEXIS 13297, at *5 (S.D.N.Y. July 22, 2002) (finding that litigating a federal suit based on allegations that were never made at the administrative level would make a "mockery of the exhaustion requirement").


## II. Claims Against Nurse Cygan

## A. Eighth Amendment Claims:  General Standards

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)).  *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059- 60 (9th Cir. 1992), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (1997)).  At the same time, however, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment."  *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y. 2002) (quoting *Inciarte v. Spears*, No. 97 Civ. 3155(HB), 1998 WL 190279, *3 (S.D.N.Y. April 20, 1998)); *see, e.g.*, *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) ("Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue-the sorts of ailments for which many people who are not in prison do not seek medical attention-does not ... violate the Constitution'") (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective element.  With respect to the objective aspect, the court must ask whether there has been a

sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. *See Wilson*, 501 U.S. at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

## B. Application to this Case

Applying these standards here, I find that plaintiff has failed to demonstrate any genuine issue of material fact with respect to his claim against Cygan, and that Cygan is entitled to summary judgment. It is not clear that plaintiff has shown any lack of care by Cygan but, at most, she may

have been negligent in not treating plaintiff sooner.  That does not make out an Eighth Amendment claim.

The evidence shows that plaintiff went to the infirmary on the morning of April 29 complaining of chest pain, but there appears to be no dispute that he walked there without assistance, and that he was able to speak without apparent difficulty.  There does not appear to be any evidence in the medical record that plaintiff had suffered from heart aliments.  Cygan states, and plaintiff does not dispute, that she was working on another patient at the time, and I see no evidence from which a factfinder could reasonably conclude that Cygan acted out of malice by not attending to plaintiff sooner.  Even if, as the IGRC concluded, Cygan could have been more "proactive" by calling for a physician or having plaintiff admitted to the infirmary, there is no evidence that she acted wantonly for the purpose of inflicting pain on plaintiff.  She is therefore entitled to summary judgment.  *See Evan*, 336 F.Supp.2d at 263 ("Even if [defendant physician] arguably acted hastily, or overreacted, by terminating plaintiff's first visit when plaintiff began complaining about the delay in seeing him, that does not show that [defendant] had a culpable state of mind for Eighth Amendment purposes").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #27) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated:  Rochester, New York
        July 13, 2005.